(February 20, 1901.)

## STATE v. DIXON.

[63 Pac. 801.]

SUFFICIENCY OF INFORMATION—TRESPASS—RESISTANCE OF.—Where the information states, in ordinary and concise language, the commission of a crime, it is sufficient. A mere civil trespass, unaccompanied by such force as to make it a breach of the peace, is not a sufficient provocation to warrant the shooting of the trespasser. One in the possession of land may resist an entry thereon, but has no right to shoot the trespasser, unless that be rendered necessary to prevent a felony.

(Syllabus by the court.)

APPEAL from District Court, Nez Perces County.

James W. Reid, for Appellant.

The law of self-defense on one's own premises as declared by the courts of California in its leading cases. (*People v. Williams,* 36 Cal. 286; *People v. Tankin,* 62 Cal. 468; 4 Deering's Code, sec. 692, note; *People v. Urias,* 8 Cal. 341.) The law in reference to one's right to the possession of property and his right to use so much force as is necessary to prevent a forcible trespass. (*People v. Payne,* 8 Cal. 342; *People v. Flanagan,* 60 Cal. 2, 44 Am. Rep. 52; *People v. Scoggin,* 37 Cal. 683.) The appellant, Levi Dixon, was upon his homestead, in the possession whereof he had been placed by the court, and was simply using force sufficient to maintain his possession. What he did is supported by authority of decisions in other states. (*People v. Lewis,* 36 Cal. 531; *People v. Martin,* 2 Cal. 484; *People v. Ah Foy,* 10 Cal. 301; *People v. Ashburn,* 47 Cal. 98.) Where the trespasser goes with the intent and with the means to commit a felony, if necessary to accomplish the end intended, the owner of the property may repel force by force. (*People v. Payne,* 8 Cal. 343; *Whipley v. Mills,* 9 Cal. 641; *Hastings v. Halleck,* 10 Cal. 31; *Randall v. Buffington,* 10 Cal. 491; *Connor v. Jones,* 28 Cal. 59; *People v. Alameda Turnpike Co.,* 30 Cal. 184; *People v. Honshell,* 10 Cal. 187; *People v. Acosta,* 10 Cal. 196; *Filkins v. People,* 69 N. Y. 101, 25 Am. Rep. 143; *Southers v. State,* 18 Tex. 352; *Barnes v. Martin,* 15 Wis. 240, 82 Am. Dec. 670.)

Attorney General Frank Martin, for the State.

The information in this case meets all the requirements of our statutes, and under the rule as above stated is sufficient. It sufficiently informed the defendant of the charge, and enabled him to prepare for his defense, and it does not appear that any right of the defendant, substantial or otherwise, has been injured. (Rev. Stats., secs 7685, 7686, 7687, 8236; *State v. Ellington,* 4 Idaho, 529, 43 Pac. 60.) One is not justified in taking life to repel a mere trespass on his lands; but this instruction was more favorable to defendant than established rules of law, as it required the jury also to find that the Linkes

believed that they had a legal right to go on the land, etc., before they could find the defendant not justified in the shooting. (*Carroll v. State,* 23 Ala. 28, 58 Am. Dec. 282, note 288; *Wallace v. United States,* 162 U. S. 473, 16 Sup. Ct. Rep. 859; Wharton's Criminal Law, 9th ed., secs. 500, 506; *People v. Flanagan,* 60 Cal. 2, 44 Am. Rep. 52; *People v. Dunne,* 80 Cal. 34, 21 Pac. 1130; *State v. Tarter,* 23 Or. 38, 37 Pac. 53-55; *People v. Teixeira,* 123 Cal. 297, 55 Pac. 988; *People v. Hecker,* 109 Cal. 451, 42 Pac. 311; Am. & Eng. Ency. of Law, 1st ed., p. 572.)

SULLIVAN, J.—The appellant was prosecuted for the crime of assault with intent to murder, convicted of an assault likely to produce great bodily harm, and sentenced to three years' imprisonment. This appeal is from the judgment. Nineteen errors are assigned for the reversal of the judgment. Most of them pertain to the giving or refusal to give certain instructions. However, the first error assigned is that the court erred in overruling the demurrer to the information. The information states in ordinary and concise language the commission of the crime of assault with intent to murder, and it was not error to overrule the demurrer. (*State v. Ellington,* 4 Idaho, 529, 43 Pac. 61.)

The record, *inter alia,* shows the following facts: The appellant and one Allen Linke had a contest in the United States land office, at Lewiston, over a tract of land concerning and on which the acts occurred of which the appellant was convicted as above stated. Said Linke was successful in said contest, and the appellant appealed to the commissioner of the general land office, at Washington, D. C. During the pendency of said land contest a suit was brought by the appellant against said Linke in the probate court of Nez Perces county for the possession of said disputed premises, which finally resulted in a judgment in favor of the appellant, and appellant was placed in the possession of said premises by writ of restitution. Thereafter, on the twelfth day of April, 1899, said Linke, his father, two brothers, and John Wunders and Frank Bogner entered upon a portion of said premises and began to seed the same to wheat, as they were advised by their attorney they had a right to do.

There is a conflict in the evidence as to whether the said Linke, and others with him, destroyed the gate through which they entered on said premises. The defendant and his witnesses testified that the gate was torn to pieces, while Linke and others testified that the gate "was wired up with one staple"; that they drew the staple, unwired the gate, and went in. After Linke had commenced seeding said premises, the father of the appellant appeared and ordered them to quit seeding and to leave or quit the premises, which they refused to do. Thereupon he returned to where the appellant and his brothers were (some distance from where Linke was sowing grain), and, after having some conversation with the defendant, got on a horse, and he and his sons returned to the place where Linke and others were sowing grain. He rode up to the head of the mules that Alvin Linke was driving, and told him that he must not seed that land. Linke did not reply, but kept urging on his mules; and the father of the defendant testified that he (the father) had to get out of the way of the mules pretty quick, as the blind mule came near running over him and the pony he was riding. It appears that Linke drove on and continued sowing grain, and the father of defendant followed him to the west end of the field; and there Linke turned his mule team, which was hitched to a spring wagon in which sat Bogner sowing grain from a box, and started back across the field, and was there met by the defendant, his brothers, Grant and Henry, and his father. It appears that not far away were the father of Alvin Linke, the brother, one Hammond, and Wunders. All of the persons above named were near by. There is some conflict in the evidence as to what then occurred. It appears that the appellant caught one of the mules that Alvin Linke was driving by the bit. Alvin was in the spring wagon at that time, with the lines in one hand and a thorn or willow stick in the other, which he had for the purpose of urging the mules. Alvin Linke then urged the mules forward, and the appellant drew his pistol and shot him three times, each shot taking effect. Linke thereupon jumped out of the spring wagon and ran off, and there is considerable evidence in the record to show that appellant fired a fourth shot at him while he was running.

It appears that the father of Alvin Linke stood near by with a walking stick in his hand, and several of the witnesses testified that after the shots were fired he struck the appellant over the head with his walking stick, and thereupon the father of appellant took the stick away from him. Thereupon, according to the testimony of old man Linke, the appellant shot at him, the ball passing through his coat, and then placed the pistol against his breast and snapped it, and it did not go off. The evidence shows that neither Alvin Linke nor his friends were armed. However, it does appear that the brother of Alvin Linke, just before the shooting occurred, ran thirty or forty feet away and got a stick or club, and was returning to the spring wagon with it, when Alvin Linke told him to throw it away, as they did not want any trouble, and thereupon he threw it away. It is also shown that shortly before the shooting occurred the appellant had a conversation with said Wunders and ordered him off those premises, and pulled a pistol out of his pocket and told him to go quick, and he went.

It is contended by counsel for appellant that under the facts of this case the appellant had a right to drive Linke off from said land, and that he had the right to use such force as was necessary to do so, even if it resulted in taking life—in short, that the men's refusal to leave the land when requested by appellant would justify him in shooting them down. We know of no principle of law that sustains such contention. It is not shown that Linke and those with him intended or endeavored to commit a felony in getting possession of said land. Indeed, all of the facts established by the evidence repel that idea. They did not intend to kill appellant or any of the persons with him, or to destroy or carry away any property belonging to him. They were not armed, and made no assault whatever on any one. Conceding that Linke and those with him were trespassers, it is too well settled to require citation of authorities that one is not justified in taking life to repel a mere civil trespass; and especially is that true where one through stealth gets possession of land. The one entitled to the possession would not be justified in shooting the trespasser if he did not quit the premises at his request. Had appellant been at the gate

through which the Linkes passed to get possession of said land, and then and there ordered them to desist from taking down said gate and coming upon said land, he, no doubt, would have been justified in using reasonable force to prevent the contemplated trespass. But that is not this case. The Linkes had gotten possession of said land, and had already seeded about three acres of it, when appellant appeared and ordered them off. They did not attempt to assault the defendant until after he had shot Alvin Linke. They only attempted to continue seeding when appellant seized one of their mules by the bit and undertook forcibly to eject Linke from the land. In *Carroll v. State,* 23 Ala. 28, 58 Am. Dec. 282, it is held that a mere civil trespass, unaccompanied by such force as to make it a breach of the peace, is not a sufficient provocation to reduce the killing of the trespasser to manslaughter under circumstances from which the law would imply malice, and that the owner of the premises may resist an entry, but he has no right to kill, unless it be rendered necessary to prevent a destruction of his property, or to defend himself against loss of life or bodily harm. In *Noles v. State,* 26 Ala. 31, 62 Am. Dec. 711, cited in note to *Carroll v. State, supra,* it is held that a mere trespass which created no reasonable belief in the mind of the slayer that the trespasser would commit any felony or do any great bodily harm could not be permitted to constitute an excuse for the person committing the murder. At section 500 of Wharton's Criminal Law (vol. 1, 10th ed.) discussing the question of how far trespass is a palliation or excuse for killing, and the reason of the well-settled rule on that subject, the author says, "The reason is that in the given cases of trespass the killing was unnecessary; the party killing knowing that only a trespass, or at most a trival larceny, was intended." And at section 506 of the same volume it is stated that, where an intruder is in the house, the owner cannot kill him simply for refusing to leave. In the case at bar there is no evidence showing or tending to show that Alvin Linke had committed or intended to commit any crime whatever, unless it be a mere trespass or contempt of court, on said premises; and it is clearly shown that the shooting done by the appellant was wholly unjustifiable.

Neither of the authorities cited by counsel for appellant on the point under consideration is applicable to the facts of the case at bar. After a most careful examination of the instructions given by the court and complained of, we find no error in them. Some of those requested by counsel for appellant and refused were covered by those given; and the court did not err in refusing to give other instructions requested by counsel for appellant, as they were not applicable to the facts of this case. The evidence is amply sufficient to support the verdict. The judgment of the trial court is affirmed.

Quarles, C. J., and Stockslager, J., concur.