472 P.2d 638

The STATE of Idaho, Plaintiff-Respondent,

v.

John B. MATHEWSON, Defendant-Appellant.

No. 10644.

Supreme Court of Idaho.

July 23, 1970.

J. H. Felton, Lewiston, for defendant-appellant.

Robert M. Robson, Atty. Gen., George C. Detweiler, Asst. Atty. Gen., Boise, and Roy E. Mosman, Pros. Atty., Lewiston, for plaintiff-respondent.

McQUADE, Justice.

Defendant-appellant, John B. Mathewson, was tried before a jury for assault with a deadly weapon under I.C. § 18–906. He was found guilty of that crime, and

fined $1,500. Mathewson has appealed from that judgment.

In the evening of May 27, 1969, Michael Hall and Bradley Dayton, aged 17 and 16 respectively, were fishing near the confluence of the Snake and Clearwater Rivers in Washington. While engaged in that pastime, they landed their boat on the shore which was appellant's property. At that time appellant appeared, informed the youths that they were trespassing, and boarded their boat. Appellant then rowed the boat away from shore and carried on a discussion with Hall and Dayton who remained on shore. This conversation ultimately developed into how the boys could make amends for their alleged trespass. It was suggested that they pay Mathewson $30 or property of the equivalent value. The only item which they possessed of that value was Bradley Dayton's watch. Appellant took this, and, apparently, he asserted that he would hold the watch until the boys were forthcoming with the $30.

The boys then returned to Lewiston where they told Bradley Dayton's father, the complaining witness, Lane Dayton, of the episode. The three then spent an indeterminate period of time attempting to discover who appellant was. When they finally ascertained that Mathewson resided on Sixteenth Avenue in Lewiston and went to see him, it was after 7:30 p.m. and evening dusk had gathered.

Mathewson's residence in Lewiston is on one of several adjoining lots which he owns; the remainder of the property is devoted to a repository (a junk yard) for old automobile bodies and parts. The entire area, residence and junk yard is surrounded by a chainlink fence in which there are several gates. When the auto wrecking business had been open, one of these gates had provided access for the public, even though it had apparently been marked with "Keep Out" signs. When Lane Dayton, his son, and Michael Hall arrived at Mathewson's residence and junk yard on the evening of May 27, 1969, they entered appellant's property by a side gate which they found open. There was a large "Keep Out" sign on this gate as well.

From this point on there is some substantial disharmony in the testimony. Hall and Dayton asserted that they did not see the ten year old "Keep Out" sign on the gate in the semi-darkness. Once they were inside, they said they hailed appellant, who appeared from behind a truck. Lane Dayton then explained that they were there for the watch. Mathewson, at about the same time rang a bell and also warned them they were trespassing, but, according to the three prosecution witnesses, he did not ask them to leave, but indicated that he wished to discuss the watch. Then, according to the testimony of the Daytons and Hall, Mathewson suddenly hit Lane Dayton in the face with his fist without warning or cause. The elder Dayton squared off to protect himself and warned Mathewson that he, Dayton, could break Mathewson in half, and that the latter person would be well advised to break off combat. Dayton stated that he said this only to avoid further fisticuffs.

It is generally conceded that appellant's wife arrived at about that time. Mathewson and she contend that she said that the three intruders were trespassers and that they should leave. The Daytons and Hall asserted that she had only asked them not to provoke him (apparently meaning appellant). She then, having heard the offer to break her husband in half, returned to their residence ostensibly to telephone the police.

After this, according to the Daytons and Hall, appellant went into a nearby shack, only to emerge a moment later in the process of loading a 12 gauge single-shot shotgun. It was testified that appellant then approached the three pointing the loaded gun directly at them at close range. Asking not to be shot, the Daytons and Hall proceeded out of the gate, into their car and away. Although they generally agreed that appellant greeted them with myriad oaths, casting doubt on the legitimacy and humanity of their parentage, the prosecu-

tion witnesses agreed that the elder Dayton had not used foul language or provoked Mathewson in any manner. On rebuttal the prosecution presented several witnesses who testified that Lane Dayton, because of strongly felt religious convictions, never used foul language.

Mathewson's account differed substantially from that given by the State's witnesses. According to him, the two youths and the elder Dayton approached him in a threatening manner, with Lane Dayton calling him several foul names. Dayton then allegedly stood on his, appellant's foot, leaving appellant no choice but to strike the aggressor on the jaw in order to make his escape. At this point, appellant's wife, having told the three that they were trespassers and should leave, and having heard Dayton's offer to rend her husband asunder, was sent off to call the police. Mathewson then alleged that the three cut him off from the path back to his residence, and that they offered to "finish the job" before the police arrived. Faced with this prospect, Mathewson asserted that he got his already loaded shotgun from the nearby shed. He claimed, however, that he did not point it at anybody, in fact, that he could not, because of the location of the various stacks of automobile pieces and other materials in the vicinity.

The jury resolved the conflicting testimony and by its verdict must have given greater weight and credence to that of the three prosecution witnesses.

Appellant's assignment of error number one raises the issue of whether a gun need be fired before a threat of its use constitutes an assault. An assault is defined by I.C. § 18–901 as:

"18–901. *Assault defined.*—An assault is an unlawful *attempt,* coupled with a present ability, to commit a violent injury on the person of another." (Emphasis supplied)

Appellant argues that the use of the word "attempt" indicates that the standard for criminal assault is more stringent than that for civil assault, *i.e.,* a mere *offer,* combined with a present ability. Appellant urges that the statute, because of the use of "attempt", requires that a gun must be fired before an assault may be consummated. We do not agree with this contention.

▆▆▆ The correct rule is that the pointing of a loaded gun, combined with a stated or implied threat, is sufficient to justify a jury's finding of the "attempt" required under our statutory definition of assault.[1] The threat may be conditional.[2] Thus, it has been held that pointing a gun at the prosecuting witness while ordering him off certain property—the conditional threat being that, if the prosecuting witness did not leave, he would be shot—made out facts sufficient to support a properly instructed jury's conviction of assault with a deadly weapon.[3] In this case the jury was properly instructed concerning the facts which they must have found in order to have rendered their verdict of guilty,[4]

1. People v. McMakin, 8 Cal. 547, 548–549 (1857); People v. Laya, 123 Cal.App. 2d 7, 266 P.2d 157, 161 (1954); People v. Thompson, 93 Cal.App.2d 780, 209 P.2d 819, 820 (1949); see State v. Bush, 50 Idaho 166, 172, 295 P. 432 (1930); State v. Yturaspe, 22 Idaho 360, 125 P. 802 (1912); People v. Sylva, 143 Cal. 62, 76 P. 814 (1904); People v. Pearson, 150 Cal.App.2d 811, 311 P.2d 142 (1957); People v. McCoy, 25 Cal.2d 177, 153 P.2d 315, 321 (1944); People v. Simpson, 134 Cal.App. 646, 25 P.2d 1008, 1010 (1933).

2. *See* People v. McMakin, *supra* note 1; People v. Thompson, *supra* note 1.

3. People v. McMakin, *supra* note 1.

4. Court's instruction no. 6:
   "An assault is an unlawful attempt, coupled with a present ability to commit great bodily harm and injury upon the person of another.
   "To constitute an assault, it is not necessary that any actual injury is inflicted, that fact may be considered by the jury in connection with all other evidence, in determining whether an assault has been committed and, if so, the nature of the assault."
   Court's instruction no. 7:
   "An assault with a deadly weapon is an unlawful attempt, coupled with a pres-

and the facts, as recounted by the prosecution witnesses, amply met the rules stated above. The verdict and judgment were, therefore, supported by substantial competent, though conflicting, evidence and they will not be disturbed on appeal.

■ Appellant argues that instructions on the offenses defined by I.C. §§ 18–3303[5] and 18–3304[6] should have been given. These sections set out offenses included within assault with a deadly weapon as charged in the information in this case.[7] Appellant did not request instructions on included offenses, and, in the absence of such a request, the trial court committed no error in failing to so instruct the jury.[8]

■ Appellant, in his second assignment of error, contends that the trial court erred in giving the following instruction:

### "INSTRUCTION NO. 13

"In defense of goods or possessions, if a man endeavor to deprive another of them, the other may lay hands on him to protect his goods or possessions. How-ever, this does not authorize the defendant to use a deadly weapon to protect his goods or possessions.

"To merely go upon the lands of another will not justify or excuse a resort to the use of a deadly weapon to drive the intruder off."

Other of the district court's instructions fully set out the law of self-defense, including the right of a person attacked to stand his ground and to repel the attack with the quantum of force which would appear necessary to a reasonable man.[9] The trial court's instruction quoted above was designed merely to differentiate between the intensity of force allowed to defend property only from that used to repel violence directed toward person. The distinction is well established,[10] and we find no error in the instruction.

■ Appellant, in his third assignment of error, contends that several of his instructions on defense of person and property should have been given. We have reviewed the instructions which were given

---

ent ability, to commit great bodily harm and injury upon the person of another with a deadly weapon.

"A deadly weapon is any object, instrument or weapon which is used in such a manner as to be capable of producing, and likely to produce death or great bodily injury.

"To constitute an assault with a deadly weapon, actual injury need not be caused. The characteristic and necessary elements of the offense are the unlawful attempt, with criminal intent, to commit a violent injury upon the person of another, the use of a deadly weapon in the attempt, and the present ability to accomplish the injury. If an injury is inflicted, that fact may be considered by the jury, in connection with all other evidence, in determining the means used, the manner in which the injury was inflicted, and the type of offense committed."

5. "18–3303. *Exhibition or use of deadly weapon.*—Every person who, not in necessary self-defense, in the presence of two or more persons, draws or exhibits any deadly weapon in a rude, angry and threatening manner, or who, in any manner, unlawfully uses the same, in any fight or quarrel, is guilty of a misdemeanor."

6. "18–3304. *Aiming firearms at others.*— Any person who shall intentionally, without malice, point or aim any firearm at or toward any other person shall be guilty of a misdemeanor and shall be subject to a fine of not more than $50.00 and not less than $5.00."

7. *See generally*, on "included offenses" under I.C. § 19–2312; State v. Anderson, 82 Idaho 293, 300–303, 352 P.2d 972 (1960).

8. State v. Anderson, *supra* note 7.

9. *See, e. g.*, State v. Scroggins, 91 Idaho 847, 849, 433 P.2d 117, 119 (1967), State v. Woodward, 58 Idaho 385, 393, 74 P.2d 92 (1937).

10. State v. Dixon, 7 Idaho 518, 522, 63 P. 801 (1901); People v. Doud, 223 Mich. 120, 193 N.W. 884, 32 A.L.R. 1535 (1923); Dickinson v. State, 3 Okl.Cr. 151, 104 P. 923, 925 (1909); R. Perkins, Criminal Law 1026–27 (2d ed. 1969); 1 R. Anderson, Wharton's Criminal Law and Procedure § 354, at 709, § 355, at 712 (1957).

by the trial court on this facet of the case and we have found them to be adequate and without error. The point having been covered by the instructions of the district court, it was not error to refuse requested instructions on the same issue.[11]

■ Appellant also argues that he should have been allowed to elicit testimony concerning the comparative sizes of himself and the prosecuting witness and his two young companions. Because all persons involved in the episode appeared in court and the jury was, consequently, aware of the size relationship between the three prosecution witnesses and Mathewson, appellant suffered no prejudicial effect from the exclusion of the testimony concerning relative sizes.[12]

■ Appellant's final two contentions are that the district court erred in excluding evidence that appellant's Washington property was posted with "Keep Out" signs and that the Dayton and Hall boys were fishing without Washington fishing licenses. Such testimony would not have been material to any issue in this criminal action if it had been allowed into evidence. It was, therefore, not error to refuse it admission.

We have reviewed all of appellant's assignments of error and, having found nothing in them indicating prejudice to appellant's rights, we affirm the judgment of conviction of the district court.

McFADDEN, C. J., and DONALDSON, SHEPARD and SPEAR, JJ., concur.

11. E. g., State v. Baldwin, 69 Idaho 459, 465, 208 P.2d 161 (1949).

12. See State v. Blacksten, 86 Idaho 401, 408, 387 P.2d 467 (1963).