**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Madeline RUBIN, Defendant-Appellant.**

**No. 83–5104.**

United States Court of Appeals,
Eleventh Circuit.

June 4, 1984.

Mark King Leban, Miami, Fla., for defendant-appellant.

Gregory Weiss, Norman Moskowitz, Sonia Escobio O'Donnell, Nancy Worthington, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, and TJOFLAT and HENDERSON, Circuit Judges.

ALBERT J. HENDERSON, Circuit Judge:

Madeline Rubin appeals her convictions on charges of conspiracy to import into the United States approximately 2,748 grams of cocaine and of possession with intent to distribute that cocaine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. §§ 952(a) and 953. She assigns error (1) to the district court's refusal to dismiss the indictment with prejudice under the terms of the Speedy Trial Act, and (2) to the limitation of her attorney's cross-examination of a government witness, and the restriction of the direct examination of a defense witness. After a thorough examination of the record and relevant case law, we find no error by the district court and affirm.

The facts of this case are not in dispute. In early September, 1981, Rubin and her co-defendant, Jorge Lago, arranged for Janine Ann Buhler, an acquaintance of Rubin, to accompany them on a trip to Peru for the purpose of bringing cocaine back into the United States. They remained in Peru for eleven days. During their stay, Lago acquired the cocaine, after which all three used some of the drug.

On September 27, 1981, Lago, Rubin and Buhler flew from Peru to Miami International Airport. Once there, Lago and Rubin passed through customs without incident. When Buhler reached the customs checkpoint, she was searched and five pounds of cocaine was discovered strapped to her body. She was arrested and charged with importation of cocaine and possession of cocaine with intent to distribute.

Buhler subsequently entered into a plea bargain with the government whereby she agreed to plead guilty to Count One of the indictment if the government would dismiss Count Two. Buhler also consented to testify before the grand jury and at the trial of Rubin and Lago. No agreement was reached with respect to the type or length of sentence.

Buhler initially testified before the grand jury on December 21, 1981. Largely in reliance on that testimony, an indictment was returned against Rubin and Lago on January 18, 1982. Rubin was arraigned on January 28, 1982. On March 1, 1982, the assistant United States Attorney assigned to the case learned that Buhler had lied to the grand jury concerning her motive in going to Peru. Eight days later, the assistant United States Attorney informed the court of Buhler's perjury. Twenty-five days later, he furnished the same information to Rubin's counsel. On March 25, 1982, Rubin filed a motion to dismiss the indictment because of this perjured testimony. The motion was granted on June 7, 1982.

On June 21, 1982, Buhler appeared once again before the grand jury, admitted her perjury during her first appearance, and told the "true" reason for her trip to Lima. On that date, the grand jury returned a second indictment charging Rubin and Lago with the identical offenses set forth in the first indictment.

On August 3, 1982, Rubin filed a motion to dismiss the second indictment, claiming that the government had failed to bring her to trial within 70 days of her arraignment in violation of the Speedy Trial Act, 18 U.S.C. § 3161 et seq. She alleged that the 70-day period commenced to run with her arraignment under the first indictment. Her counsel pointed out that 189 days had elapsed since her initial appearance on the first indictment on January 28, 1982.[1] The district court agreed and held that the Speedy Trial Act's 70-day period for the commencement of Rubin's trial began to run on January 28, 1982. The court then addressed whether the second indictment should be dismissed with or without prejudice. After reviewing the factors outlined in 18 U.S.C. § 3162(a)(2),[2] the court dismissed the second indictment without prejudice. A written order to that effect was entered on August 12, 1982.

On August 23, 1983, the grand jury returned a third indictment charging the identical acts contained in the first two indictments. Rubin attempted three times to have this indictment dismissed for violation of the Speedy Trial Act, but was unsuccessful each time.

On November 24, 1982, both Rubin and Lago were placed on trial. The jury found the defendants guilty on both counts. Rubin was sentenced to two seven year concurrent prison terms.

## I.

Rubin's first assignment of error focuses on whether the district court abused its discretion in dismissing the second indictment without prejudice. The district court specifically considered the factors enumerated in 18 U.S.C. § 3162(a)(2) in reaching the decision to dismiss the indictment without prejudice.

1. 18 U.S.C. § 3161(c)(1) provides in pertinent part:

   (c)(1) In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

2. 18 U.S.C. § 3162(a)(2) provides in pertinent part:

   If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant. The defendant shall have the burden of proof of supporting such motion but the Government shall have the burden of going forward with the evidence in connection with any exclusion of time under subparagraph 3161(h)(3). In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice. Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section.

First, the court found the offenses charged to be serious. The evidence shows that Rubin played an active and major role in the crimes. She made the initial contact with the carrier Buhler, she traveled to the source country to help arrange the transfer of cocaine, and she was present on the carrier's return flight to the United States. Hence, the serious nature of the crime and her significant participation in its commission certainly weighs heavily in favor of dismissal without prejudice.

The court next considered the circumstances which led to the dismissal of the indictment. From our reading of the transcript of the dismissal hearing, it is evident that the district court mistakenly assumed that the 70-day time limit for the second indictment began running from the date of Rubin's arraignment on the first indictment—January 28, 1982. Counsel for the appellants urged that the interval between January 28, 1982, and the date of the dismissal of the first indictment should have been counted along with the time running from the date of return of the second indictment. According to Rubin, 189 days had elapsed from the date of her first court appearance in January, 1982. The district court agreed with this computation.

■ Counsel and the district court overlooked the fact that the first indictment had been dismissed on the motion of the defendant, thereby triggering the commencement of a new 70-day time limitation.[3] Where an indictment is dismissed on

the motion of the defendant, or for reasons other than the motion or request of the government, the 70-day time period begins to run anew with the return of a superseding indictment. *See, e.g., United States v. Dennis,* 625 F.2d 782, 793 (8th Cir.1980); *United States v. Sebastian,* 428 F.Supp. 967, 973 (W.D.N.Y.), *aff'd,* 562 F.2d 211 (2d Cir.1977), *aff'd without opinion,* 578 F.2d 1372 (1978).

■ Here, after the first indictment was dismissed at the instance of the defendant, the second indictment was returned on June 21, 1982, and Rubin was arraigned on that indictment on July 9, 1982. The July 9, 1982, arraignment was the beginning of the critical period for purposes of determining whether or not to grant the defendant's motion to dismiss the second indictment. Had this date been used in calculating the speedy trial restrictions on the second indictment, it could not have been dismissed, because there were only 24 non-excludable days between the date of arraignment on the second indictment and the dismissal of that indictment.[4]

There was honest confusion as to the correct starting point for counting the non-excludable days for speedy trial purposes. Because of this error, the second indictment was unnecessarily and improperly dismissed. This circumstance preponderates heavily in favor of the government and against dismissal with prejudice of the second indictment.

---

**3.** 18 U.S.C. § 3161(d)(1) provides in pertinent part:

If any indictment or information is dismissed upon motion of the defendant, or any charge contained in a complaint filed against an individual is dismissed or otherwise dropped, and thereafter a complaint is filed against such defendant or individual charging him with the same offense or an offense based on the same criminal episode, or an information or indictment is filed charging such defendant with the same offense or an offense based on the same conduct or arising from the same criminal episode, the provisions of subsections (b) and (c) of this section shall be applicable, as the case may be.

**4.** The government inaccurately recites the date of Rubin's arraignment and the number of days

between that arraignment and the filing of Rubin's motion to dismiss on Speedy Trial Act grounds. According to the record on appeal, the controlling events are:

| | |
|---|---|
| June 21, 1982 | Second Indictment Returned |
| July 9, 1982 | Arraignment |
| August 3, 1982 | Motion to Dismiss Filed |
| August 8, 1982 | Hearing on Motion to Dismiss |
| August 12, 1982 | Indictment Dismissed Without Prejudice |

Under 18 U.S.C. § 3161(h)(1)(F), the period of delay resulting from the filing of the motion to dismiss on August 3, 1982, is excluded in computing the time within which the trial must commence. Therefore, the period from July 9, 1982, to August 3, 1982—24 days—is the relevant time here.

The last statutory factor gives emphasis to the impact of reprosecution on the administration of the Speedy Trial Act and on the administration of justice. Rubin claims that the prosecutor's conduct in waiting for twenty-five days to inform her of Buhler's perjury demonstrated a disregard for the stated purposes of the Speedy Trial Act and, in turn, for her rights to an expedited trial. The policy considerations behind the Speedy Trial Act are protection of the rights of defendants and promotion of the interest of society in the prompt disposition of criminal cases. For these reasons alone, we believe that the integrity of this legislative mandate must be guarded with zealous attention. Although these objectives are paramount, we feel that the reprosecution of Rubin had little impact either on the Speedy Trial Act or on the administration of justice. The delay in bringing Rubin to trial was minimal, and no prejudice resulted therefrom. Moreover, since Rubin's crime was undoubtedly serious, it would not have been in the interest of justice to dismiss the indictment with prejudice where there was no showing that Rubin suffered more harm than accrued to her by virtue of having been originally charged with the crime.

## II.

Rubin complains that the district court improperly restricted her cross-examination of Buhler and impaired any meaningful attack on Buhler's credibility through a defense character witness.

Where the credibility of a witness is placed in issue, the district court has broad discretion in determining the extent to which cross-examination may exceed the scope of direct examination. *United States v. Thetford*, 676 F.2d 170, 183 (5th Cir.1982) (*en banc*), *cert. denied*, 459 U.S. 1148, 103 S.Ct. 790, 74 L.Ed.2d 996 (1983).[5] A trial court's decision on cross-examination will not be disturbed on appeal absent an abuse of discretion. *United States v.*

*Tolliver*, 665 F.2d 1005, 1008 (11th Cir.), *cert. denied*, 456 U.S. 935, 102 S.Ct. 1991, 72 L.Ed.2d 455 (1982).

The limitations imposed on the cross-examination of Buhler concerned matters about which she had previously testified: her perjury before the grand jury; her plea agreement with the government; her lies to customs officials, agents of the Drug Enforcement Agency and the prosecutor; her prior drug use; and her sentence. Further evidence along these lines would have been merely cumulative so there was no abuse of discretion in the restriction of the repetitious questions. *United States v. Diecidue*, 603 F.2d 535, 552 (5th Cir.1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980); *accord, United States v. Goodman*, 605 F.2d 870, 880 (5th Cir.1979) (no abuse of discretion in limitation of cross-examination where the substance of the desired impeaching information had already been given to the jury).

The trial court also acted correctly in sustaining objections to defense counsel's argumentative, redundant and sometimes speculative questions. The court's exercise of control over such interrogation is wholly contemplated and sanctioned by Federal Rules of Evidence.

During the direct examination of Victoria Avrutis, a defense witness, Rubin sought to introduce into evidence certain letters containing references to Buhler's past "fantasies." Rubin also sought to elicit testimony about a drug overdose by Buhler unrelated in time to the criminal incident at issue in this case. The district court precluded this evidence pursuant to Rule 608(b) of the Federal Rules of Evidence which provides:

(b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not

---

5. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness, be inquired into on cross-examination of the witness (1) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Both the letters and the testimony of drug overdose constitute specific instances of conduct unrelated to truthfulness and were thus properly excluded by the court.

Avrutis was called to testify solely as to Buhler's bad character. The court permitted the "character" testimony, but did not permit questions about specific instances of Buhler's conduct—the "fantasy" letters and a drug overdose. The court's application of Rule 608(b) did not unduly restrict the testimony of the witness.

We AFFIRM the judgment of conviction.