726 P.2d 772

The STATE of Idaho,
Plaintiff-Respondent,

v.

James MASON, Defendant-Appellant.

No. 15999.

Court of Appeals of Idaho.

July 30, 1986.

William P. Combo and Jerry K. Woolf,
Idaho Falls, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

James Mason was found guilty by a jury and convicted for aggravated assault. On appeal, Mason contends (1) he was denied a timely preliminary hearing as required by I.C.R. 5.1; (2) he was denied his right to a speedy trial; (3) evidence obtained pursuant to a search warrant should have been suppressed because the return of the warrant was not verified by the executing officer; and (4) the district court committed prejudicial error by refusing to instruct the jury on lesser included offenses and on the theory of self-defense. We hold the trial court erred in refusing to give an instruction requested by Mason concerning the misdemeanor crime of exhibiting a deadly weapon. We reverse the judgment of conviction and remand the case for a new trial.

The record reveals the following facts. Mason and Patricia Stapleton had verbal confrontations in a bar and its parking lot during the early morning hours of February 14, 1984. After the confrontation inside the bar, Mason was asked by the bartender to leave. Mason left the bar and went to his automobile. Stapleton and a companion also left the bar and again confronted Mason. The argument began anew; and Mason asked Stapleton to leave him alone. The argument continued until Mason turned and walked toward the rear of his car at which time Stapleton and her companion went in the opposite direction toward their vehicle. Mason obtained a revolver from the trunk of his car and walked a short distance in Stapleton's direction. He then allegedly pointed the revolver at Stapleton and said "I'm going to blow your guts out." Mason acknowledged at trial that he removed the revolver from the car and walked in Stapleton's direction, but he denied making the threatening statement or pointing the gun at her. He testified that he held the gun at his side at all times with the barrel pointed directly at the ground. He then returned to his car and placed the revolver in the trunk. A passing policeman was hailed by witnesses at the scene. Mason was arrested and charged with aggravated assault, a felony. He was arraigned the following day before a magistrate.

Two months later, on April 17, 1984, Mason received a notice that his preliminary hearing had been set for the next day. Due to the lack of adequate notice, Mason and the state stipulated to continuing the matter without the waiver of any rights. The hearing was finally held on May 9 at which time Mason moved that the case should be dismissed because the preliminary hearing had not been held within twenty-one days of his initial appearance before the magistrate. *See* I.C.R. 5.1 (1980). The magistrate agreed and dismissed the complaint without prejudice.

The aggravated assault complaint was refiled on May 23 and Mason was summoned to appear again on May 31. Mason's attorney arranged for Mason to appear on that date without his counsel being present also. At this appearance, Mason was advised by the magistrate that a preliminary hearing must be requested before being scheduled. Mason did not request such a hearing. Later, on July 26, Mason received notice that a preliminary hearing was set for August 16. Mason moved that the charge be dismissed because, again, a preliminary hearing had not been timely held. The motion was denied, the hearing was held and Mason was bound over to district court. The information was filed the following day.

Mason pled not guilty in district court on September 4 and trial was set for September 17. Mason requested a transcript of the preliminary hearing to support his pretrial motion to dismiss. Because the transcript was not received by the trial date, the district court rescheduled the trial at Mason's request. A jury trial was subsequently held January 14, 1985—eleven months after Mason's arrest. The district court denied Mason's pretrial and trial motions to dismiss for lack of a timely preliminary hearing and for denial of a speedy

trial. Mason also moved that the revolver obtained from the trunk of his car pursuant to a search warrant be suppressed because the return of the warrant was not verified by the executing police officer. Finally, at trial, he maintained that the jury should have been instructed on lesser included offenses and on his theory of self-defense. The court denied his suppression motion and his requested jury instructions. Mason was convicted of aggravated assault. As noted, Mason continues to assert these same issues on appeal.

I

■ Mason contends the refiled aggravated assault charge should have been dismissed because the second preliminary hearing was not held within twenty-one days as required by I.C.R. 5.1. Rule 5.1(a) entitles any defendant to a preliminary hearing when charged with a felony. Before amendment in 1985, this rule provided in part:

> If the defendant does not waive the preliminary hearing, the magistrate *shall fix a time for the preliminary hearing to be held within a reasonable time, but in any event not later than ... twenty-one (21) days after the request* for a preliminary hearing if [the defendant] is not in custody. With the consent of the defendant and upon showing of good cause, taking into account the public interest and prompt disposition of criminal cases, time limits in this subsection may be extended. In the absence of such consent by the defendant, time limits may be extended only upon a showing that extraordinary circumstances exist .... [Emphasis added.]

Mason maintains that the rule as quoted mandates that the magistrate *shall* fix a time for the preliminary hearing. He insists that the rule is unconditional and required no affirmative acts by a defendant to trigger the setting of a preliminary hearing. The state counters that the rule requires a preliminary hearing within twenty-one days after the defendant *requests* a preliminary hearing. Since Mason did not request a hearing, the state maintains the time limit was not applicable and that the hearing was held within a reasonable period.

In ruling on Mason's pretrial motion to dismiss, the district court held that the running of the twenty-one day period did not commence until the defendant requested the hearing. After reviewing the transcript of Mason's appearance in response to the summons, the district court found that Mason was advised he should discuss the need for a preliminary hearing with his attorney. Once Mason requested a preliminary hearing, then the hearing must be held within a certain time frame. As previously mentioned, Mason's counsel arranged for Mason to appear by himself at the summons appearance. The commitment order resulting from that appearance further states that "[a] Preliminary Hearing will be set upon request." The record reveals no such request by Mason. Giving full meaning to the language of the rule persuades us to hold that the rule[1] required the defendant to first request a preliminary hearing before invoking the time limits. In the absence of Mason's request for a hearing after being advised of his need to request one, we hold that the second preliminary hearing was held within a reasonable period of time. The district

---

1. Rule 5.1(a) has subsequently been amended to eliminate any confusion as to when a preliminary hearing must be scheduled. As amended in 1985, the Rule requires: "If the defendant does not waive the preliminary hearing, the magistrate shall fix a time for the preliminary hearing to be held within a reasonable time, but in any event not later than ... twenty-one (21) days after the initial appearance if [the defendant] is not in custody."

This rule was further amended in 1986, but not in any respect pertinent to the instant case. *See* Correctional Order amending I.C.R. 5.1(a), issued by the Idaho Supreme Court on July 23, 1986 (stating the rule as amended in both 1985 and 1986 and correcting typographical errors in the rule as it appeared in the May, 1986 *Advocate* and in the 1986 pocket supplement to the bound volume of the Idaho Court Rules).

court properly denied Mason's Rule 5.1 motion to dismiss.[2]

## II

Mason asserts he was denied his right to a speedy trial as guaranteed under I.C. § 19–3501, the United States Constitution and the Idaho Constitution. As a result, Mason argues that the district court erred in refusing to grant Mason's motion to dismiss the charge against him.

When a defendant's right to speedy trial is in issue, we first determine if the statute, I.C. § 19–3501, has been abridged.[3] *State v. Hobson,* 99 Idaho 200, 579 P.2d 697 (1978); *State v. Dillard,* 110 Idaho 834, 718 P.2d 1272 (Ct.App.1986). If there is no "good cause" for delay or if the trial was not postponed at the defendant's request, then the charge against the defendant must be dismissed and our inquiry is at an end. However, if the statute is not breached, we must then determine whether both the state and federal constitutional safeguards which protect a defendant's right to a speedy trial have been violated. *State v. Russell,* 108 Idaho 58, 696 P.2d 909 (1985).

## A

■ Subsection (1) of I.C. § 19–3501 deals with the pretrial time frame from arrest to the filing of an indictment or information. It requires dismissal of the charge when no indictment or information is filed within six months of the defendant's arrest. In this case, the information was filed six months and three days after Mason's arrest at the scene of the altercation. However, the original charge against Mason was dismissed on May 9, 1984.

Rather than being rearrested, Mason received a summons to appear. Consequently, there was no second "arrest" to restart the running of the statute's six-month time limit. Because Mason was ordered to appear and answer for the charge of aggravated assault, we believe that the service of the summons was the functional equivalent of an arrest. Thus, the statutory clock began to run anew. *E.g., United States v. Feldman,* 788 F.2d 544 (9th Cir.1986); *United States v. Rubin,* 733 F.2d 837 (11th Cir.1984); *United States v. McCown,* 711 F.2d 1441, 1446 (9th Cir.1983). The information was filed within six months of the service of the summons. Thus, we hold that I.C. § 19–3501(1) was not violated.

Idaho Code § 19–3501(2) is not applicable to the present case. Mason was brought to trial on January 14, 1985, within six months from the date the information was filed on August 17, 1984. In summary, we hold that Mason was not entitled under I.C. § 19–3501 to a dismissal of the aggravated assault charge against him.

## B

■ We now turn to the constitutional provisions. The sixth amendment[4] to the United States Constitution guarantees a criminal defendant the right to a speedy trial. In addition, the Idaho Constitution in art. 1, § 13, guarantees a defendant the right "to a speedy and public trial." Although the state guarantee is not necessarily identical to the federal guarantee, our Supreme Court has utilized the federal test in determining whether the speedy trial guarantee under the state constitution has been violated. *State v. Stuart,* 110 Idaho

---

**2.** Because we hold the time limit in Rule 5.1 was not violated, we need not reach the question of whether the violation of the twenty-one day limit infringed on Mason's right to a speedy trial.

**3.** The statute recites in part:
The court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed, in the following cases:
1. When a person has been held to answer for a public offense, if an indictment or information is not found against him and filed with the court within six (6) months from the date of his arrest.
2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial within six (6) months from the date that the indictment or information is filed with the court.

**4.** The amendment recites in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...."

163, 715 P.2d 833 (1985); *State v. Russell,* 108 Idaho at 60, 696 P.2d at 911; *State v. Lindsay,* 96 Idaho 474, 531 P.2d 236 (1975). In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court announced a four-part balancing test to determine whether the federal constitutional right to a speedy trial had been denied. The four factors to be balanced are (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice occasioned by the delay. Under the Idaho constitutional provision, the time of delay is measured from the point when formal charges are filed or when the defendant is arrested, whichever occurs first. *Stuart,* 110 Idaho at 173, 715 P.2d at 843. We examine the *Barker* factors below.

1. *Length of Delay.* In considering the length-of-delay factor, we look at the aggregate lapse of time to determine whether an inquiry concerning denial of the speedy trial right has been triggered. We then subtract any defense-caused delay and any reasonable period of time attributed to a court, in determining the "cognizable delay" for the speedy trial analysis. *State v. Holtslander,* 102 Idaho 306, 629 P.2d 702 (1981); *State v. Russell, supra.*

Here the aggregate length of time elapsing between Mason's summons to appear on the refiled assault charge and the date his trial began was approximately seven and one-half months. Our Supreme Court has held a seven and one-half month interval sufficient to trigger an inquiry into a speedy trial claim. *State v. Talmage,* 104 Idaho 249, 658 P.2d 920 (1983).

Next, we can disregard any period of time chargeable to the defendant and the court. Here, Mason's trial was initially calendared for September 17, 1984, following his arraignment and plea of not guilty in district court on September 4. However, Mason moved to vacate his trial on the ground "that all pre-trial Motions have not been completed." The district court heard and granted Mason's request on September 17—the scheduled trial date—and, in early

November, 1984, reset the trial for January 7, 1985. After notification of the January trial date, Mason filed motions on November 20 to dismiss the information and to suppress evidence. These motions were heard in mid-December, were taken under advisement by the court, and were denied by written order of the district court entered on January 2, 1985. In that same order, the district judge rescheduled the trial for January 14, 1985. Thus, we can disregard the time elapsing from September 17—when the court granted Mason's motion to vacate the trial—through January 2, 1985, when disposition of Mason's pretrial motions was completed, leaving a "cognizable" period of delay of slightly more than three months. Upon this basis we hold that the length-of-delay factor is entitled to little weight in our balancing analysis.

2. *Reason for Delay.* The three-month "cognizable" delay in this case primarily occurred during the period after Mason had appeared in response to the summons on May 31, 1984, had been advised that he must request a preliminary hearing if one was to be held, and the filing of the information in district court on August 17, 1984. The remainder of the delay occurred between January 2, 1985 when the district court decided Mason's pretrial motions and January 14, 1985, the ultimate trial date.

The delay from May 31 to August 17, 1984, stemmed from Mason's failure to request a preliminary hearing, after he had been advised by the magistrate that no preliminary hearing would be held unless Mason requested one. The record shows that the magistrate, on July 26, 1984, without request from Mason, scheduled a preliminary hearing for August 16. The hearing was held on that date and an order, binding Mason over to district court for trial, was entered the same day. The next day an information was filed in the district court charging Mason with aggravated assault.

As noted, we have concluded that the magistrate was not required to schedule a preliminary hearing under Rule 5.1(a), as it

then existed, unless such hearing was requested by the defendant. We hold that the reason for delay in respect to the preliminary hearing is not assessable to the state. Likewise, we find no impermissible delay chargeable to the state for the period elapsing between January 2, 1985, when Mason's pretrial motions were denied, and the trial date of January 14, some twelve days later.

3. *The Defendant's Assertion of his Speedy Trial Right.* Here Mason asserted his right to a speedy trial in November, 1984, after the September trial date had been vacated at his request and after a trial date in January, 1985, had been set. His assertion of that right was made through a motion to dismiss the information, premised upon the lack of a timely preliminary hearing. This factor is entitled to little weight in our balancing process.

4. *Prejudice Occasioned by the Delay.* *Barker* identifies three interests the speedy trial right was designed to protect: (a) preventing oppressive pretrial incarcerations; (b) minimizing anxiety and concern of the accused; and (c) limiting the possibility that the defense will be impaired. Here, the first two interests are of minor concern. Mason was released on his own recognizance throughout his prosecution, and therefore did not suffer any "oppressive pretrial incarceration." Also, the record is devoid of any showing that Mason suffered any anxiety or concern from the proceedings—other than what may be inferred from the fact that he was accused of the crime, thus demonstrating that any violation of this interest was "minimized."

The third interest espoused by *Barker* —the possibility of impairment of his defense—forms the gravamen of Mason's argument. Mason asserts he was prejudiced because he was unable to present the testimony of an eye-witness, Frank Gonzales, which would allegedly substantiate Mason's version of the events on the night of February 14. Mason testified that he recorded an interview with Gonzales some

two days after his arrest. He maintains Gonzales was available for the first scheduled preliminary hearing but due to the delays, he was not able to locate Gonzales and present his testimony at trial.[5] Before discussing the substance of Gonzales' alleged version of the events, we will review the testimonial evidence that was submitted to the jury.

Four witnesses testified regarding the confrontations in the bar and the alleged assault incident in the parking lot. Mrs. Stapleton explained that she and Mason were acquaintances; that Mason had once loaned her some money and later had "repossessed" her automobile to satisfy the debt. On the night in question they ran into each other at the Green Triangle Bar, near closing time. They began to argue. She said Mason poured a beer on her head and she threw two drinks on him. Mason then left the bar. When Stapleton and a companion left the bar a few minutes later, Mason was in the parking lot where he pointed a gun at Stapleton while shouting obscenities. She heard him say "I'm going to blow your guts out." She jumped into her companion's vehicle and lay down on the seat. She said she was scared, and fearful of being shot.

Another witness, Mr. Johnson, testified that he was in the bar while Stapleton and Mason were arguing. He saw Stapleton throw two drinks on Mason. He observed Mason and then Stapleton and her companion leave the bar. A few minutes later, Johnson walked out of the bar. He could see Mason pointing a gun in Stapleton's direction. He said that Stapleton was "hiding" and "ducking" behind cars in the parking lot. Johnson testified that Mason was saying something but Johnson was unable to tell what Mason's words were.

A third witness, Mr. Thorpe, testified concerning the events in the parking lot. Thorpe was an off-duty police officer from a neighboring community. He was at the Green Triangle bar with his girlfriend. As he was leaving the bar someone rushed in,

---

5. The tape of Gonzales' interview was admitted into evidence for the purposes of this appeal but was not presented to the jury. The tape is six minutes long.

relating there was a man in the parking lot with a gun. When Thorpe came out of the bar he saw Mason holding a revolver in his hand, pointed "down." As Thorpe neared his own car, he heard "a commotion like an argument." Because he was concerned about getting home, Thorpe said he didn't pay much attention until he heard someone say "I'm going to blow your guts out." Thorpe turned and saw Mason pointing the gun at Stapleton. At that time Thorpe noticed a police car passing by. He got the driver's attention. The car pulled into the Green Triangle parking lot; Thorpe told the officer what he had observed and Mason was arrested.

The fourth witness who testified about the events in the bar and the parking lot was the defendant, James Mason. Mason admitted having an argument with Stapleton over the loan transaction and his repossession of her car. He denied that he poured a beer on her head. Mason testified that he went to his car when he left the bar. He said that Stapleton and her companion—a man larger than Mason—followed and continued the argument. Mason opened the trunk of his car and took out a revolver. Stapleton and her companion left. As the police patrol car arrived, Mason put the gun back in the trunk of his vehicle. Mason denied he ever pointed the gun at Stapleton or said that he was going to blow her guts out.

In his taped interview, Gonzales stated he had witnessed the confrontation in the bar. He said Stapleton poured drinks on Mason's face and back and said she was going to blow Mason's head off. As to the events which support the state's charge of aggravated assault, Gonzales indicated a number of people were already outside the bar when he exited and he observed Mason holding a handgun at his side. Gonzales estimated that Stapleton was 150 to 200 yards away at the time he observed Mason return to the trunk of his car with the gun at his side and place the gun in the trunk. Although Gonzales' statement touches on events inside the bar and that time period just prior to Mason's arrest, his statement does not indicate that he witnessed Mason's

conduct from the time Mason left the bar to when Mason turned and walked back to the car. He did not see or hear any of the parking lot argument between Mason and Stapleton. Gonzales' interview does not indicate that he witnessed all of the events which led to the charge against Mason. His observations of events which occurred outside of the bar are consistent with the testimony of other witnesses. Therefore, Gonzales' statements, even if fully believed by the jury, would not directly contradict the state's version of those events.

Nevertheless, Gonzales' report of the events he observed would lend some support to Mason's version of the incident. Gonzales' testimony likely would have assisted the jury in assessing the credibility of all witnesses to, and of the participants in, the incident. However, Mason did not show that his inability to use Gonzales as a witness at trial was a result of any delay in the prosecution process. An affidavit submitted by Mason in support of his motion to dismiss simply related that:

4. Upon being notified of the Preliminary Hearing in August of 1984, your Affiant attempted to locate said witness, and was unable, due to the fact that the witness had moved since the original contact.

5. To the date of the signing of this Affidavit, your Affiant is still unable to locate said witness, and due to that fact, said witness was unable to testify at the Preliminary Hearing, and it is believed by your Affiant, that he will be unavailable for trail [sic], and therefore your Affiant has been prejudiced as a result thereof.

Mason failed to show that he diligently exercised his right to utilize compulsory process to obtain the appearance of Gonzales. *See State v. Garza,* 109 Idaho 40, 704 P.2d 944 (Ct.App.1985); *Schwartzmiller v. State,* 108 Idaho 329, 699 P.2d 429 (Ct.App.1985). Mason's affidavit fails to show the nature or extent of his efforts to locate or maintain contact with Gonzales. It is merely speculative that Gonzales

would have been available if Mason's trial date had been held earlier than it ultimately was.

We are not persuaded that any prejudice flowing from the unavailability of Gonzales should be weighed against the state; nor does it outweigh the other *Barker* factors. In balancing all four factors we hold, on the facts before us, that Mason was not deprived of his right to a speedy trial under either the federal or the state constitutions. The facts of this case do not justify the severe remedy of dismissing the information. Accordingly, the district court did not err in denying Mason's motion to dismiss.

### III

■ Mason next asserts that the police officer's failure to promptly verify the return of the search warrant requires suppression of the evidence seized pursuant to the warrant. He contends the failure to verify the return renders the warrant invalid and, thus, the evidence seized under the warrant inadmissible. After Mason was arrested, the police obtained a warrant to search the trunk of his automobile. The police found a revolver loaded with three rounds of ammunition. Although the return listed the seized evidence, the officer who executed the warrant failed to immediately verify the return. Mason moved to prohibit introduction of the evidence at the preliminary hearing and in pretrial motions. These motions were denied. Mason points out that I.C. § 19–4415 and I.C.R. 41(d) require that the return of service on the search warrant be verified by the executing officer.[6] The return was eventually verified approximately six and one-half months after it was returned to the magistrate. The state contends that the evidence seized pursuant to the warrant was not affected by the officer's untimely verification of the return.

We are not persuaded by Mason's argument. Defects in the return of a search warrant are not of a constitutional dimen-

sion. *State v. Kelly*, 106 Idaho 268, 678 P.2d 60 (Ct.App.1984), *cert. denied,* 469 U.S. 918, 105 S.Ct. 296, 83 L.Ed.2d 231 (1984). As we stated in *State v. Curry,* "defects relating to the return of a search warrant are ministerial and do not compel invalidation of the warrant or suppression of its fruits, absent a showing of prejudice by the defendant." 103 Idaho 332, 337, 647 P.2d 788, 793 (Ct.App.1982), *quoting State v. Smith,* 15 Wash.App. 716, 552 P.2d 1059, 1062 (1976). Here Mason has demonstrated no prejudice by the police officer's untimely verification of the return. The record indicates the warrant was timely returned to the issuing court the day following its execution. Mason has not challenged the factual accuracy of the return. Consequently, the evidence need not be suppressed.

### IV

Finally, Mason asserts the district court committed prejudicial error by refusing to instruct the jury on two lesser included offenses and on his theory of self-defense. We will first examine his assertion involving the lesser included offenses.

### A

Mason contends the district court should have instructed the jury on the misdemeanor offenses of (1) assault and (2) exhibiting a deadly weapon, here a firearm. The state agrees that assault and exhibiting a firearm are lesser included offenses of aggravated assault, but submits the trial court was correct in holding that the evidence did not justify giving the requested instructions.

"An offense will be deemed to be a lesser included offense of another, greater offense, if all the elements required to sustain a conviction of the lesser included offense are included within the elements needed to sustain a conviction of the greater offense." *State v. McCormick,* 100 Ida-

---

6. Section 19–4415 provides in part: "The officer must forthwith return the warrant to the magistrate, ... verified by the affidavit of the officer."

Rule 41(d), I.C.R., requires that "[a] verified return shall be promptly made...."

668

ho 111, 114, 594 P.2d 149, 152 (1979); *State v. Atwood*, 105 Idaho 315, 318, 669 P.2d 204, 207 (Ct.App.1983). Where a reasonable view of the evidence would not support a finding that a defendant was guilty of an included offense, the trial court is not required to give the defendant's requested instruction on the included offense.

■ 1. *The assault instruction.* Mason argues that because the statutory definition of aggravated assault[7] includes the commission of "an assault,"[8] the elements necessary to sustain a conviction for assault are included within the elements needed for an aggravated assault conviction. While we agree that assault is a necessary element to an aggravated assault, the evidence adduced at trial does not demand the giving of the requested instruction. Here, the unrefuted evidence presented by Mason himself negated the need to give an instruction on assault. He admitted holding the gun; he simply denied pointing it or making a threatening statement. Consequently, any "assault"—by word or act—was committed while holding the gun. Even if the jury believed that Mason was only holding, although not pointing, the gun when he threatened to blow Stapleton's guts out, then the jury could have concluded the assault was one made with a deadly weapon—an aggravated assault.[9] As we recently said in *State v. Burke*, "A trial court is required to instruct on lesser included offenses but *only if* the elements of such offenses are reasonably supported by the evidence." 110 Idaho 621, 629, 717 P.2d 1039, 1047

(Ct.App.1986) (emphasis added). Consequently, we agree with the district court that the evidence did not require the court to give the requested instruction.

■ 2. *The exhibiting a deadly weapon instruction.* Mason also asserts the court committed reversible error by refusing to give a defense instruction on exhibiting a deadly weapon. Mason's requested jury instruction and I.C. § 18–3303 define in pertinent part the offense of exhibiting a deadly weapon as "every person who, not in necessary self-defense, in the presence of two (2) or more persons, draws or exhibits any deadly weapon in a rude, angry and threatening manner ... is guilty of a misdemeanor." Mason contends that exhibiting a dangerous weapon is a lesser included offense of aggravated assault.

There are two bases upon which one offense can be considered as included in another offense.

> An "included offense" is one which is necessarily committed in the commission of another offense; or one, the essential elements of which are, charged in the information as the manner or means by which the offense is committed.

*State v. McCormick*, 100 Idaho 111, 114, 594 P.2d 149, 152 (1979), *quoting State v. Hall*, 86 Idaho 63, 69, 383 P.2d 602, 605 (1963).

Taking the latter point first, here not all of the essential elements of the crime of exhibiting a deadly weapon were included among the allegations in the information

7. Aggravated assault is defined in I.C. § 18–905 as:

   *an assault:*
   (a) *With a deadly weapon* or instrument without intent to kill; or
   (b) By any means or force likely to produce great bodily harm.
   ....
   (d) "Deadly weapon or instrument" as used in this chapter is defined to include any firearm, though unloaded or so defective that it cannot be fired. [Emphasis added.]

8. Assault is defined in I.C. § 18–901 as:
   (a) An unlawful attempt, coupled with apparent ability, to commit a violent injury on the person of another; or

   (b) An intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent.

9. We agree that merely having possession of a gun when an assault is committed does not necessarily make the assault aggravated or one committed with a deadly weapon. The weapon must be coupled to the assault; otherwise the crime would be simple assault and not an aggravated assault. Here a verbal threat to blow the victim's guts out, while holding the gun in view of the victim, couples the deadly weapon to the assault.

filed against Mason. The information alleged that Mason

knowingly, willfully, unlawfully and feloniously, with the apparent ability to do so, commit[ted] an intentional, unlawful threat to do violence to the person of another, by word and act against one Patricia Stapleton, with a deadly weapon, without the intent to kill and created a well-founded fear that such violence was imminent, to-wit: The said James Mason pointed a handgun at the said Patricia Stapleton and threatened to blow her guts out.

Under I.C. § 18–3303, the crime of exhibiting a deadly weapon is not committed unless the exhibition occurs "in the presence of two (2) or more persons." Thus the presence of two or more people is an essential element of the crime. Here that element was not contained in the allegations of the information; therefore the crime of exhibiting a deadly weapon was not an included offense under the theory that its elements were charged "as the manner or means" of the assault.[10]

However, an offense may also be an included offense if the evidence shows it was "committed in the commission of another offense." *Hall, supra.* Here from the evidence presented, the jury could have concluded that Mason—not acting in self-defense—and in the presence of Stapleton and at least three other persons (her companion and the two witnesses, Johnson and Thorpe) exhibited a deadly weapon (his revolver) in a rude, angry and threatening manner. In light of the evidence the jury should have been instructed, as requested by Mason, that Mason could be found guilty of the offense of exhibiting a deadly weapon, under I.C. § 18–3303. We hold the trial court erred in refusing to give the exhibiting a deadly weapon instruction requested by Mason.

## B

█ Mason also argues on appeal that the district court improperly refused his instructions on self-defense. Mason had offered the following two instructions: (1) "Lawful resistance to the commission of a public offense may be made by the party about to be injured." and (2) "Resistance sufficient to prevent the offense may be made by the party about to be injured to prevent an offense against his person." *See* I.C. §§ 19–201, –202. Although the district court did not give its reasons on the record for refusing these two instructions, Mason's counsel acknowledged that "The court has indicated [in the instruction conference] that he doesn't feel that, based upon the theory of the case, that Mr. Mason defended himself." The state contends that the evidence presented at trial does not support the giving of such instructions.

A defendant is entitled to have the jury instructed as to his theory of the case, but such an instruction need not be given unless there is supportive evidence for that theory. *State v. Pennell,* 108 Idaho 669, 701 P.2d 289 (Ct.App.1985); *State v. Atwood,* 105 Idaho 315, 669 P.2d 204 (Ct.App. 1983); I.C. § 19–2132. The state argues that no reasonable view of the evidence, including Mason's own testimony, would require the court to give the self-defense instructions.

We believe the trial court did not err in refusing to give the requested self-defense instructions. We find no fault with the instructions themselves. However, our examination of the record reveals that the evidence does not support the giving of the instructions. Mason testified at trial that Stapleton confronted him outside the tavern. Mason requested she leave him alone but she continued to argue. Mason testified he then

started to walk around [from the driver's door] to the trunk of the car, *and they left.* [Emphasis added.]

[Question:] And so what did you do?

[Answer:] I took the revolver out of the trunk of the car. I walked out to the edge of the [bar] sidewalk....

10. *Compare State v. Mathewson,* 93 Idaho 769, 472 P.2d 638 (1970), where our Supreme Court held the information in that case, charging assault with a deadly weapon, included the misdemeanor offense of exhibiting a deadly weapon under I.C. § 18–3303.

At that time [Stapleton and her companion] were already clear down into the slope of the parking lot....

Again, on cross-examination, Mason said:

*They left right away* because I walked around to the back of the car. [Emphasis added.]

[Question:] You stated they might have been running?

[Answer:] I think so.

[Question:] Okay. They were running. And you nevertheless got in the trunk of your car and removed a weapon, didn't you, even though they'd run off?

[Answer:] Well, I didn't know they'd run off.

. . . .

[Question:] They were still standing there while you were opening the trunk?

[Answer:] No, they weren't. But they were walking that [direction]; and then all of a sudden, I think they started a running because I couldn't see them any more. And I had the weapon in my hand down by my side.

Mason testified that he did not see Stapleton and her companion after he opened his trunk. He testified "they went out of sight within about fifteen, twenty feet...." Other witnesses testified that Mason pointed the weapon at Stapleton when she was hiding behind or in her vehicle. Even Mason's unavailable witness indicated in his taped interview that Stapleton was 150 to 200 yards away from Mason. The record indicates that at the time Mason obtained his revolver and followed Stapleton a short distance, he was aware that Stapleton had left. Any threat to Mason abated when Stapleton left the area. We conclude that any threat to Mason had subsided when Stapleton left his presence. Thus, Mason was not "about to be injured" and lawful resistance was unnecessary. I.C. § 19–202; *State v. Scroggins*, 91 Idaho 847, 433 P.2d 117 (1967) (conduct by one who claims self-defense must be reasonable). The evidence does not support the giving of the self-defense instructions.

In summary, Mason was not denied a timely preliminary hearing or a speedy trial, the evidence obtained pursuant to the search warrant was not suppressible, and the district court properly refused Mason's requested jury instructions on the included offense of simple assault and on the theory of self-defense. However the court erred in refusing to give Mason's requested jury instruction on the included offense of exhibiting a deadly weapon. The judgment of conviction is reversed and the case remanded for new trial.

BURNETT and SWANSTROM, JJ., concur.